UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
)
FRANK LYNOTT,                           )
                                        )   Case No. C14-0503RSL
                    Plaintiff,          )
        v.                              )
                                        )   ORDER DISBURSING FUNDS
LAURIE A. LUCKOVICH, et al.,            )
                                        )
                    Defendant.          )
_____)

This matter comes before the Court on "Defendant Eastside Funding, LLC's Motion for Partial Summary Judgment and to Release Sale Proceeds Deposited in Court Registry" (Dkt. # 69) and "Plaintiff's Motion for Relief From Deadline, and Offer of Proof" (Dkt. # 93). Pursuant to the prior orders of the Court, the property having a common address of 25730 38th Avenue NW, Stanwood, WA 98292 was sold on September 12, 2014, and the proceeds of the sale ($424,556.74) were deposited in the registry of the Court. The proceeds were deposited with the understanding that the funds would be held "subject to the liens and claims of all parties in the same manner and with the same priority as the parties' liens or claims against the Property prior to its sale." Dkt. # 65 at 3. Eastside Funding seeks a summary determination that its Deed of Trust enjoys first priority and that it is entitled to immediate disbursement of $356,540.75 ($328,811.28 in principal and $27,729.47 in non-default interest

through January 5, 2015).[1]

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

---

[1] After the motion for disbursement was filed, the parties stipulated that Eastside Funding's claim for default interest (at 24%) and other fees would be determined at a later date. Dkt. # 90; Dkt. # 91 at 12.

1   Having reviewed the memoranda, declarations, and exhibits submitted by the
2 parties,[2] the Court finds as follows:
3   On August 10, 2012, defendant Laurie Luckovich signed a Promissory Note in the
4 amount of $328,811.28 in favor of Eastside Funding.  The Note was secured by a Deed of Trust.
5 Eastside Funding disbursed the loan proceeds, which Luckovich used to purchase the Stanwood
6 property.  The Deed of Trust was recorded on August 14, 2012.  Luckovich defaulted on the loan
7 in January 2013.
8   Plaintiff Lynott alleges that Luckovich improperly used $83,000 of Lynott's
9 money to make the down payment on the Stanwood property.  Lynott recorded a claim against
10 the property on February 28, 2014.  The United States recorded notice of a federal tax lien on the
11 property in June 2014.  Because Washington generally applies a "first in time, first in right" rule,
12 the "priority of competing lien claims depends on the order in which those claims attached to the
13 encumbered property, subject to recording requirements."  Summerhill Village Homeowners
14 Ass'n v. Roughley, __ Wn. App. __, 289 P.3d 645, 647 (2012).  Thus, absent an applicable
15 exception to the "first in time" rule,[3] Eastside Funding's first-recorded lien takes precedence
16 over the claims of Lynott and the United States.[4]

17 **A.  Effectiveness of the August 14, 2012, Recording**
18   Lynott argues that the Deed of Trust recorded on August 14, 2012, is invalid or
19 otherwise not entitled to priority because (1) Eastside Funding was not the source of the funds
20 loaned to Luckovich and was simply disbursing funds provided by a third party, DLG, Inc.,

---

[2] The Court has considered the DLG, Inc., documents and the arguments raised in "Plaintiff's Motion for Relief for Deadline, and Offer of Proof" in determining whether the funds should be released.

[3] Plaintiff has not identified any defect in the procedures or forms used to record the Deed of Trust on August 14, 2012.

[4] The United States concedes that Eastside Funding's lien has priority.  Dkt. # 77 at 2.

ORDER DISBURSING FUNDS                -3-

and/or (2) the priority afforded to the original recording was lost when the beneficial interest in the Deed of Trust was assigned to DLG., Inc., shortly after the loan originated or when it was assigned back to Eastside Funding as part of the sale of the property.

Lynott offers no case law or analysis in support of his first proposition. Whatever the original source of the funds, it was Eastside Funding that disbursed them to Luckovich and that held her promise to repay the debt. It was that promise that was secured by the Deed of Trust and noted in the property records of Snohomish County. Neither the Deed of Trust Act nor the relevant case law require more to obtain a priority interest in the property. As a practical matter, plaintiff's theory that a lender has no protectable interest unless it provides funds for the loan from its own savings account is unworkable. Such a rule would arbitrarily exclude from the protections of the recording system any lender that raises capital in order to fund its lending activities, fundamentally altering real estate lending practices that have been the norm for decades, if not centuries. More importantly, the property recording system would be thrown into disarray because subsequent purchasers and lenders would have to figure out who or what was the "true" lender in order to determine whether previously recorded liens were entitled to priority. Such an outcome would vitiate the purpose of the "first in time" rule. Absent some indication that Washington law supports plaintiff's theory, the Court declines to adopt the proposed exception to the general rule.

Plaintiff's second theory is based on the unstated assumption that the recording date of the Deed of Trust is altered every time the beneficial interest is assigned or transferred. That is simply not the case under Washington law: as "assignee of a contract steps into the shoes of the assignor," and "a priority once acquired by the recording of a mortgage is not lost because one holds it under an unrecorded assignment . . . . Priority once obtained cannot be lost." Fed. Fin. Co. v. Gerard, 90 Wn. App. 169, 177 (1998); John M. Keltch, Inc. v. Don Hoyt, Inc., 4 Wn. App. 580, 582-83 (1971). Lynott offers no authority in support of his argument that assignment of a recorded interest destroys or alters the initial recording.

ORDER DISBURSING FUNDS                   -4-

**B.  Bona Fide Purchaser**

Lynott argues that Eastside Funding was not a bona fide purchaser and cannot, therefore, rely on its August 14, 2012, recording date to assert priority. If a purchaser or lender

> has knowledge or information of facts which are sufficient to put an ordinarily prudent man upon inquiry, and the inquiry, if followed with reasonable diligence, would lead to the discovery of defects in the title or of equitable rights of others affecting the property in question, the purchaser [or lender] will be chargeable with knowledge thereof and will not be heard to say that he did not actually know of them. In other words, knowledge of facts sufficient to excite inquiry is constructive notice of all that the inquiry would have disclosed.

Mieback v. Colasurdo, 102 Wn.2d 170, 175-76 (1984) (quoting Peterson v. Weist, 38 Wash. 339, 341 (1908)). Lynott maintains that (1) Eastside Funding's past business dealings with Luckovich put it on inquiry notice regarding the source of the down payment she used to purchase the Stanwood property and/or (2) Luckovich was Eastside Funding's agent in the transaction, such that her knowledge of Lynott's equitable interest should be imputed to Eastside Funding.

In support of the first argument, Lynott relies on evidence suggesting that Eastside Funding suspected that Luckovich had cashflow problems, that Luckovich converted the proceeds from an unrelated purchase she made with Lynott, and that Luckovich got Rich Maturi (another Luckovich partner) into deals that were not financially advantageous. None of these facts or events has anything to do with the purchase of the Stanwood property in August 2012, however. The concerns regarding Luckovich's finances were noted in 2009, almost three years before the transaction in question. At the time, Luckovich was flipping at least three properties, two of which were not yet listed for sale. Whether Eastside Funding had similar concerns in 2012 is unknown.[5] The other purchases with Lynott and Maturi, while apparently potentially

---

[5] When liquidity problems were again suspected in 2013, a quick investigation showed that Luckovich's sales were generating more than enough profits to cover the purchase and remodeling costs. Decl. of Ashley Stalwich (Dkt. # 89), Ex. A at 7.

ORDER DISBURSING FUNDS            -5-

unremunerative for Luckovich's partners, in no way support an inference that Eastside Funding had a practice of ignoring known partners or their equity interests in the properties. Both the Lynott and Maturi examples involved loans made to those individuals or the companies they established with Luckovich. Other documents in the record also show that, where Eastside Funding was aware that Luckovich was purchasing property with a partner, that fact was acknowledged in the correspondence and the loan documents. Contrary to plaintiff's arguments, the evidence fully supports the statement of Brian Jessen, a member and principle of Eastside Funding, LLC, that:

> At the time that Eastside Funding disbursed the Loan proceeds to Luckovich, Eastside Funding was not aware that Plaintiff Frank Lynott claimed any interest in the Property. Eastside Funding was not aware of the source of Luckovich's down-payment to purchase the Property, and the title report did not reveal any recorded interest in Lynott's favor. If Eastside Funding had been aware that Lynott claimed an interest in the Property as part of the Loan, then Eastside Funding would have insisted that Lynott also grant a Deed of Trust in favor of Eastside Funding. For instance, Lynott granted a Deed of Trust in favor of Eastside Funding for at least one other property that he purchased using loan proceeds from Eastside Funding.

Decl. of Brian Jessen (Dkt. # 70) at ¶ 3. Plaintiff has failed to identify evidence from which a reasonable jury could conclude that Eastside Funding had any reason to suspect that Luckovich was purchasing the Stanwood property in partnership with Lynott. Thus, plaintiff's constructive notice argument fails as a matter of law.

Plaintiff's actual notice argument turns on the assertion that Luckovich was Eastside Funding's agent, such that her knowledge regarding the source of the down payment funds should be imputed to Eastside Funding and deprive it of bona fide purchaser status.

> Generally, a principal is chargeable with notice of facts known to its agent. This follows the duty of an agent to communicate his knowledge to the principal. Thus, a principal may be vicariously liable for the unauthorized conduct of an agent who is acting on the principal's behalf. But that rule does not apply when the corporate officer's knowledge or notice is acquired outside the scope of his powers or duties, or when he is not acting for or on behalf of the corporation. The same exception

> applies when the corporate officer/agent deals with the principal/corporation in his own interest which is adverse to that of the principal. Similarly, the principal is not liable when the agent steps aside from the principal's purposes in order to pursue a personal objective of the agent.

Deep Water Brewing, LLC v. Fairway Res. Ltd., 152 Wn. App. 229, 268-69 (2009) (internal citations omitted). Plaintiff argues that because Luckovich was authorized to make financing decisions and commit to loans on behalf of Eastside Funding at foreclosure sales, the commitment of funding to Luckovich furthered Eastside Funding's purposes as a lender and was not adverse to the principal. The exceptions to the general rule that a principal is chargeable with notice of facts known to the agent are stated in the alternative, however. Plaintiff may have ruled out an "adverse interest" argument, but he makes no effort to show that, in purchasing the Stanwood property and/or borrowing from Eastside Financing, Luckovich was acting within the scope of her powers or had not "stepped aside from the principal's purposes in order to pursue a personal objective."

The scope of the agency relationship between Eastside Funding and Luckovich runs through third-party Vestus. Vestus assists individuals and entities who are interested in purchasing real estate at foreclosure sales and helps its clients identify, evaluate, purchase, manage, and/or flip houses. Vestus promises "full service support" throughout the process, offering its clients a "team of professionals" to help them. One of the team was Luckovich. As an agent of Vestus, Luckovich visited and evaluated properties, presented the properties to Vestus clients at weekly meetings, provided advice regarding the auction process, and represented the clients at foreclosure sales. Vestus also promises its clients "cash available at the auctions & easy financing options." Decl. of Ashley Stalwick (Dkt. # 89), Ex. A at 6. These services are provided through Eastside Funding, a related company controlled by the same managing members. Because foreclosure auctions are cash events (*i.e.*, the purchaser must have cash or a cashier's check on hand in order to bid), the Vestus representative at auction holds cashier's checks from Eastside Funding to use if a client's bid is accepted. The amount of the

ORDER DISBURSING FUNDS -7-

cashier's check becomes a loan to the client, with the Vestus agent signing the loan documents on Eastside Funding's behalf.

Luckovich's authority to act on behalf of Eastside Funding was limited to holding and using cashier's checks from Eastside Funding to pay for properties purchased at foreclosure sale by Vestus clients. There is no indication that Luckovich was authorized to bind Eastside Funding in any other type of sale or to sign loan documents as both the borrower and the lender. In the context of the purchase of the Stanwood property, Luckovich was simply a borrower who turned to a lender with which she was familiar. When she found a property she wanted to purchase, she contacted Eastside Funding for financing, negotiated the terms of the loan,[6] and completed a loan worksheet. Decl. of Ashley Stalwick (Dkt. # 89), Ex. H. Plaintiff has failed to produce any evidence giving rise to an inference that Luckovich was not pursuing her own, personal interests when she borrowed money to from Eastside Funding to purchase the Stanwood property and/or that the purchase was somehow within the scope of her authority to advance Eastside Funding funds to Vestus clients at foreclosure sales.

**C. Rule 56(d) Continuance**

In his opposition memorandum, plaintiff requests additional time in which to search for evidence regarding DLG, Inc.'s involvement in the mortgage, arguing that such evidence is relevant to whether Eastside Funding can claim bona fide purchaser status. The Court has considered the additional information submitted by plaintiff on November 20, 2014, and assumes, for purposes of this motion, that Eastside Funding used third-party funds to originate the loan and immediately assigned the beneficial interest therein to DLG, Inc. Plaintiff has not identified any other discovery he deems necessary to a full hearing of these issues, nor

---

[6] Although plaintiff implies that it was Luckovich who determined what percentage of the purchase price would have to be paid as a down payment, the record is clear that it was Jessen, Eastside Funding's managing member, that approved a 20% down payment. Decl. of Ashley Stalwick (Dkt. # 89), Ex. H at 30.

ORDER DISBURSING FUNDS              -8-

has he shown diligence in pursuing issues related to Eastside Funding's status as a bona fide purchaser. The request for a continuance is DENIED.

For all of the foregoing reasons, defendant Eastside Funding's motion for partial summary judgment (Dkt. # 69) is GRANTED. Eastside Funding's Deed of Trust enjoys first priority, and the Clerk of Court is authorized and directed to draw a check on the funds deposited in the registry of the Court in the amount of $356,869.55 ($328,811.28 in principal plus $28,058.27 in non-default interest through January 8, 2015), payable to Eastside Funding, LLC, and mail or deliver the check to its counsel, Daniel Kittle. Eastside Funding shall promptly provide to the Clerk the information required by LCR 67(b). Plaintiff's motion for relief from deadline (Dkt. # 93) is also GRANTED.

Dated this 8th day of January, 2015.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge